**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTON UHL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-01058 |
| | ) | Judge Nora Barry Fischer |
| COUNTY OF ALLEGHENY, ALLEGHENY | ) | |
| COUNTY POLICE DEPARTMENT, CHARLES | ) | |
| W. MOFFAT, Allegheny County Police | ) | |
| Superintendent, individually and in his official | ) | |
| capacity, and GLENN ZILCH, Allegheny County | ) | |
| Police Inspector, individually and in his official | ) | |
| capacity, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Anton Uhl filed the instant civil action against Defendants County of Allegheny ("County"), Allegheny County Police Department ("County Police"), Defendant Charles W. Moffat ("Moffat"), and Defendant Glenn Zilch ("Zilch") (collectively, "Defendants"), alleging a violation of his rights under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants terminated him in retaliation for filing an internal complaint alleging ethical violations by County police officers and the County's stated reason for his termination is merely a pretext. For the following reasons, the Court will grant Defendants' Motion for Summary Judgment [33].

## FACTS

On September 1, 1992, the County hired Uhl to work as a police officer on the County Police force. (Docket No. 35, ¶1; Docket No. 40, ¶1). While working as a police officer, on or about September 2, 2003, Plaintiff filed a Complaint with the Accountability, Conduct and Ethics Commission ("ACE"), alleging various ethical violations within the County Police.

(Docket No. 35, ¶2; Docket No. 40, at ¶2). At the time Plaintiff filed the ACE Complaint, Kenneth Fulton held the position of the Superintendent of the County Police; however, on or about February 3, 2004, Defendant Moffat replaced him as Superintendent of the County Police. (Docket No. 35, at ¶4); (Docket No. 40, at ¶4). While Defendants assert that the ACE Commission did not disclose Uhl's identity until November 7, 2007 and that Moffat never knew that Uhl filed the complaint with ACE, Plaintiff contends that "circumstantial evidence indicates otherwise." (Docket No. 35, at ¶¶3, 6); (Docket No. 40, at ¶¶3, 6).

On or about July 8, 2004, Defendant Moffat learned of alleged inappropriate comments of a sexual nature made by Uhl (while on duty) towards a 16-year-old female lifeguard at one of the County's pools, Boyce Park.[1] Moffat asked the Allegheny County Department of Human Resources ("ACHR"), specifically manager Deborah Nerone, to investigate the allegations. (Docket No. 35, at ¶10).[2] During the investigation, Manager Nerone interviewed the Manager of the Boyce Park Pool, nine lifeguards (including the complainant), and another police officer. The witnesses reported that Uhl made sexual insinuations to female lifeguards, whistled at them, called them "babe" and "honey," and stared at them in an inappropriate manner. They also reported an ongoing banter of a sexual nature, which caused the female employees at the pool to feel uncomfortable.

On January 18, 2005, the Allegheny County Bureau of Police (signed by "Inspector Zilch") issued a notice to Uhl, informing him of the charges against him in violation of the

---

[1] Moffat learned of said allegations when the 16-year-old's parents made a complaint during a telephone call.

[2] Plaintiff denies.

"Manual of Rules, Regulations, Policies and Procedures:" "Conduct Unbecoming a Member," "Respect to be Shown," and "Law Enforcement Code of Ethics." (Docket No. 35, at ¶12) (Docket No. 40, at ¶12).[3] The January 18, 2005 notice also informed Uhl that a *Loudermill* hearing[4] would be held on February 2, 2005. (Docket No. 35, at ¶12) (Docket No. 40, at ¶12).

On February 2, 2005, the administrative board held a hearing, which the Plaintiff did not attend, and, on the same day, the Assistant Superintendent issued a Memorandum indicating that the board found all the charges to be valid.[5] (Docket No. 35 at ¶12; Docket No. 40 at ¶12). At the behest of Defendant Moffat, Deborah Nerone, the Manager of Employee Relations for the Department of Human Resources, conducted an investigation. In a Memorandum dated March 24, 2005, Manager Nerone determined that "the behavior exhibited by Uhl was inappropriate and unprofessional" and concluded that "Officer Uhl failed to meet the standards and ideals representative of an Officer in uniform and a member of the Allegheny County Police Department." (Docket No. 35 at ¶14).[6] On April 5, 2005, Defendant Moffat advised the Plaintiff (by way of confidential memorandum) that, having reviewed the allegations as well as

---

[3]

    According to the notice, while the allegations against the Plaintiff did not fall under the scope of sexual harassment, Inspector Zilch determined that, "based on my review of all reports regarding the allegations of sexual harassment against Officer Anton Uhl and a review of the notes from interviews conducted by Debi Nerone, Human Resources Manager," Officer Uhl had violated the listed rules and regulations. (Docket No. 35-2).

[4]

    A *Loudermill* hearing is the name given to a hearing for a public employee conducted pursuant to the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). *See Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 491 n.1 (3d Cir. 2002).

[5]

    Plaintiff also points out that the administrative board (in the February 2, 2005 Memorandum) recommended that the Plaintiff be suspended for a period of ten (10) days. (Docket No. 40 at ¶13).

[6]

    Plaintiff denies the same. (Docket No. 40 at ¶14). *See infra*, n.12.

the findings of Manager Nerone and the administrative board at the *Loudermill* hearing, he would terminated effective April 11, 2005. (Docket No. 35 at ¶15).[7]

On April 11, 2005, Uhl filed a grievance through his labor union (the Allegheny County Police Association) requesting reinstatement under the terms of the union's collective bargaining agreement. On January 11, 2006, a labor arbitrator determined that Uhl's conduct was indeed "inappropriate and resulted in conduct unbecoming a member." However, the arbitrator reduced Uhl's termination to a 30-day suspension and awarded back pay, benefits, and reinstatement. (Docket No. 35 at ¶17; Docket No. 40 at ¶17).

## PROCEDURAL HISTORY

On August 8, 2006, Plaintiff filed his Complaint alleging a violation of his First Amendment Rights under the United States Constitution by way of 42 U.S.C. § 1983[8] against Defendants County, County Police, Moffat, and Zilch. On September 29, 2006, Defendants filed

---

[7]

Plaintiff denies, asserting that Defendant Zilch advised him of his termination. (Docket No. 40 at ¶15). However, Plaintiff cites to no evidence to support this allegation.

[8]

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

a Motion to Dismiss. In lieu of a response thereto, on October 18, 2006, Plaintiff filed a Motion for Leave to Amend Complaint, which the Court granted the next day. On October 27, 2006, Plaintiff filed his First Amended Complaint, adding facts in support of his assertion that his ACE Complaint constituted speech as a private citizen and not within his official duties as an employee of the County Police. (Docket No. 12). On December 5, 2006, Defendants filed their Answer to the First Amended Complaint. (Docket No. 16).[9]

On November 19, 2007, Defendants filed the instant motion accompanied by a Brief in Support of Motion for Summary Judgment and a Statement of Undisputed Facts. (Docket Nos. 33, 34, & 35). After the Court granted an extension of time to respond, on January 3, 2008, Plaintiff filed Plaintiff's Response to Defendants' Motion for Summary Judgment along with a Brief in Support of Plaintiff's Response to Motion for Summary Judgment and Plaintiff's Response to Defendants' Statement of Undisputed Facts. (Docket Nos. 38, 39, & 43). Hence, Defendants' motion is ripe for disposition.

## STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will

---

[9]

On April 6, 2007, the instant matter was reassigned to the undersigned Judge.

not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. "The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civil Action No. 05-942, 2008 WL 828033, at *4 (W.D. Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721 at 40 (2d ed.1983))); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at

322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## ANALYSIS

In his Complaint, Plaintiff asserts one claim against Defendants County, County Police, Moffat, and Zilch: a violation of his right to free speech, specifically to speak on matters of public concern, as protected by the First Amendment to the United States Constitution. (*See generally* Complaint). Because the Court's analysis differs as to the type of defendant named, i.e., individual versus municipality, the Court will address Defendants' motion for summary judgment in this manner.

1. *Individual Defendant Moffat*

Defendants assert that, as to Defendant Moffat, Plaintiff "is unable to show that his protected activity, that is the ACE complaint filed in September 2003, was a substantial or motivating factor in the decision to terminate him." (Docket No. 34 at 6). In particular, Defendants contend that "[w]ithout nay affirmative evidence that Moffat was aware of his protected activity, Uhl cannot possibly establish that his conduct motivated Moffat's decision to terminate him." (Docket No. 34 at 7). In response, Plaintiff argues that circumstantial evidence demonstrates that Defendant Moffat "had knowledge of the Plaintiff's ACE Commission complaint." (Docket No. 39 at 12-13).

The First Amendment to the United States Constitution safeguards the right to free speech. U.S. Const. amend. 1. The provisions of the First Amendment bind state actors by way of incorporation through the Due Process Clause of the Fourteenth Amendment. *See Locke v. Davey*, 540 U.S. 712, 718 (2004).

When evaluating a claim for retaliation for exercising First Amendment rights, a court applies a three-part test:

> First, a plaintiff must show that his conduct was constitutionally protected. Second, he must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action. Finally, the defendant may defeat the plaintiff's case 'by showing that it would have taken the same action even in the absence of the protected conduct.'

*Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (citing *Bd. of County Comm'rs. v. Umbehr*, 518 U.S. 668, 675 (1996) (internal citations omitted)).[10]

As to the first element, Defendants do not challenge the assertion that Uhl engaged in protected speech when he filed the ACE complaint and hence, the Court declines to address the same. (*See* Docket No. 34 at 5) (providing that "for purposes of this motion only that by filing that complaint Uhl engaged in protected speech").[11] As to the second element, Uhl must show

[10]
    The parties cite and rely upon *Baldessare v. New Jersey*, 250 F.3d 188, 194-195 (3d Cir. 2001), for the same three-part test.

[11]
    A public employee's speech is protected activity when:

> (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). See also Reilly v. City of Atlantic City, No. 06-2591, 2008 WL 2579185,

that his purported protected activity, i.e., the filing of a complaint with ACE in September of 2003, was a substantial or motivating factor in the decision to terminate his employment. The Plaintiff bears the burden of persuasion on the issue of causation. *Mount Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). Further, "[p]roving the motivation behind official action is often a problematic undertaking." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985).

"It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose*, 303 F.3d at 493 (citing *Allen v. Iranon*, 283 F.3d 1070, 1076 (9th Cir. 2002) (finding in First Amendment retaliation claim that "[i]n order to retaliate against an employee for his speech, an employer must be aware of that speech"). A cursory review of the chronology of events surrounding Plaintiff's filing of a complaint with ACE and his termination supports a finding that Defendant Moffat was not aware of Uhl's purported protected activity. On or about September 2, 2003, Uhl filed a complaint with the ACE Commission.[12] (Docket No. 35 at ¶2; Docket No. 40 at ¶2). On February 3, 2004, Defendant Moffat was hired. (Docket No. 35 at ¶4; Docket No. 40 at ¶4). On or about July 8, 2004, Moffatt learned of a complaint from a 16-year-old lifeguard at Boyce Park pool alleging inappropriate sexual comments made by the Plaintiff. (Docket No. 35 at ¶9).[13] On February 2, 2005, the ACE Commission held a *Loudermill* hearing, and, by Memorandum dated the same day, the administrative board found that the charges against

---

at *9 (3d. Cir. July 1, 2008).

[12]
    The Court notes that a November 12, 2003 letter from the ACE Commission to the Plaintiff notified him that a "full investigation" had commenced based on his complaint. (Docket No. 35-2). Further, the letter indicated that his identity would "remain confidential." (Docket No. 35-2).

[13]
    Plaintiff denies the same "absent further proof." (Docket No. 40 at ¶9).

Plaintiff to be valid. (Docket No. 35 at ¶12; Docket No. 40 at ¶12). On March 24, 2005, Investigator Nerone forwarded a report to Defendant Moffat concluding that Uhl's behavior was "inappropriate and unprofessional" and that he "failed to meet the standards and ideals representative of an Officer in uniform and a member of the Allegheny County Police Department." (Docket No. 35 at ¶14).[14] On April 5, 2005, Defendant Moffat (or, according to Plaintiff, Defendant Zilch) informed Uhl of his termination, effective April 11, 2005. (Docket No. 35 at ¶15; Docket No. 40 at ¶15). Lastly, on November 7, 2007, in response to a letter from counsel for Plaintiff, the Chair of the ACE Commission forwarded a copy of Plaintiff's ACE complaint. (Docket No. 35 at ¶12).[15] Absent any evidence to the contrary, the sequence of events demonstrates that Defendant Moffat did not know of Plaintiff's filing of a complaint with the ACE Commission when he terminated his employment.

In addition, Defendant Moffat testified at his deposition that he did not know that Uhl filed a complaint with ACE. (*See* Docket No. 35-2 at 16:23-25) ("Q: So basically, you were never made aware that the plaintiff had filed a complaint? A: That's correct") (Deposition of

---

[14]

Plaintiff denies this contention and instead asserts that Manager Nerone "cleared the Plaintiff, finding that the Plaintiff had not engaged in sexual harassment but only conduct becoming." (Docket No. 40 at ¶14). However, Plaintiff's assertion that Manager Nerone found that he "had not engaged in sexual harassment" is relatively unremarkable insofar he was never charged with the same but instead only charged with "Conduct Unbecoming A Member," "Respect to be Shown," and Law Enforcement Code of Ethics." Manager Nerone found Uhl's behavior to be "inappropriate and unprofessional" and hence, the Court fails to see how Manager Nerone "cleared" the Plaintiff in any way.

[15]

Plaintiff denies the same to the extent that Defendants contend that the "ACE Commission did not disclose Uhl's identity until November 7, 2007" by arguing that circumstantial evidence indicates to the contrary. (Docket No. 40 at ¶3). However, Plaintiff does not appear to dispute (and cannot based on the letter) that the Chair of the ACE Commission sent such a letter to him on November 7, 2007.

Charles Moffat). Plaintiff's own deposition testimony fails to contradict Defendant's Moffat's lack of knowledge as to the ACE complaint. (*See* Docket No. 35-2 at 8:19-24) ("Q: But my question is, do you have any knowledge or information as you sit here today that the superintendent did, in fact, know that you were the person that had filed this complaint? A: Nothing I could substantiate, no") (Deposition of Anton Uhl).

As to the lack of knowledge of Plaintiff's purported protected activity, the Court finds the instant case akin to *Ambrose*, in which the U.S. Court of Appeals for the Third Circuit addressed a similar claim of denial of knowledge by the decision-maker of the plaintiff's protected activity. 303 F.3d 488. There, the plaintiff was a police sergeant who brought a First Amendment retaliation claim against the defendant township alleging that he was suspended as a result of his submitting an affidavit in support of a fellow officer's lawsuit against the township. *Id*. at 490. The evidence at trial established that the officer had signed the affidavit on May 13, 1999 and that the affidavit had been supplied to the township's counsel and its solicitor within a 371 page document production on June 17, 1999. *Id*. at 493-494. The township commissioners all denied knowing of the existence of the affidavit prior to voting to suspend the officer on July 12, 1999. *Id*. at 493. The Court found that although the denials by the commissioners were not dispositive of the issue of knowledge, the officer bore the burden of proof on that issue and his claim failed because of the lack of any other evidence that the commissioners had knowledge of the affidavit. *Id*. The Court held that the knowledge of the township's counsel and its solicitor could not be imputed to the ultimate decisionmakers (the voting commissioners in that case) to sustain the officer's First Amendment retaliation claim and that temporal proximity between the protected

activity and the retaliatory action were not sufficient to sustain such a claim without the plaintiff first proving of knowledge by the defendants of the protected activity. *Id*. at 494.

The Court in *Ambrose* found that while the denial of knowledge of the protected speech by the decision-makers "was not necessarily dispositive of the issue," the plaintiff's failure to point to any other evidence showing that they knew about the protected speech led the Court to conclude that knowledge of the protected speech could not be attributed to the decision-makers. *Id.* at 493. Similarly here, Plaintiff testified in his deposition that, to his knowledge, the ACE Commission kept his identity confidential:

> Q: Was it your understanding that the commission would keep your identity confidential?
> A: Yes.
> Q: And that was your understanding throughout the investigation process?
> A: Correct.
> Q: Did that change at any time?
> A: Well, I --
> Q: And by that I mean your understanding that your identity would be kept confidential by the commission?
> A: That part, no, that remained the same.
> Q: So, to your knowledge the commission kept your identity confidential throughout the process of investigating the specific complaint?
> A: Yes.

(Uhl Deposition at 7:4-20). Accordingly, by Plaintiff's own admission, ACE kept his identity confidential (at least until November 7, 2007) and Plaintiff has presented no other evidence to the contrary. Hence, if Moffat did not know that Uhl filed a complaint with ACE at the time of termination, it follows that the same purported protected activity could not constitute a substantial or motivating factor in that decision (i.e., the alleged retaliatory action). Therefore, Uhl has failed to sustain the burden of proof that he bears.

In response, Plaintiff dedicates the vast majority of his brief in support of his theory that circumstantial evidence establishes Defendant Moffat's knowledge of Plaintiff's filing of a complaint with ACE. (Docket No. 39 at 4-13). Specifically, Plaintiff highlights three examples of purported circumstantial evidence: (1) Defendant Moffat deviated from the county's own internal procedures when he terminated Plaintiff despite recommendations of less sanctions (i.e., ten-day suspension); (2) the sanction of termination was more severe than discipline received by other police officers who engaged in "similar or more serious infractions;" and (3) Defendants treated Plaintiff differently after he filed a complaint with ACE and "there is a close proximity between the Defendants' adverse actions and the filing of the complaint." (Docket No. 39 at 6). The Court will address each in turn.

First, Plaintiff contends that "Defendants deviated from their own procedures and internal policies" by terminating him as opposed to following recommendations of lesser sanctions. However, Plaintiff points to no procedure or internal policy that requires the superintendent of police (Moffat) to adopt the recommendation resulting from the *Loudermill* hearing (i.e., ten days suspension). As such and without more evidence or argument proffered from Plaintiff, no deviation from "procedures and internal policies" appears to have occurred here.

Second, Plaintiff contends that his termination "was grossly disproportionate" to the discipline received by other police officers who engaged in "similar (conduct unbecoming or more serious infractions." (Docket No. 39 at 9). However, all of the "evidence" cited by Plaintiff in support thereof consists of allegations stemming from Plaintiff's Complaint. (*See* Docket No. 39 at 10-11). Federal Rule of Civil Procedure 56 expressly provides that "an

opposing party may not rely merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e)(2). Moreover, said language was added in response to a line of cases from the Third Circuit, which, according to the Advisory Committee Notes, "impaired the utility of the summary judgment device:"

> The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule.

Fed.R.Civ.P. 56 Advisory Committee Notes (1963 Amendment). Therefore, Plaintiff's citations to allegations in his Complaint in support of his assertion that his termination "was grossly disproportionate" to that received by other police officers does not create a genuine issue of material fact precluding summary judgment.

Third, Plaintiff asserts "that the Defendant's [sic] conduct towards the Plaintiff changed immediately following the filing of the ACE Commission report." (Docket No. 39 at 7). In support, Plaintiff relies on excerpts from his deposition alleging a transfer to a less desirable assignment as well as the denial of training and the denial to engage in work functions such as accessing a computer. (Docket No. 39 at 8-9).[16] "While it is clear that the Plaintiff as

---

[16] The Court notes that Plaintiff failed to assert these alleged instances of unfavorable conduct in Plaintiff's Response to Defendants' Statement of Undisputed Facts (Docket No. 40). Local Rule 56.1(C) requires a responding party to file a responsive concise statement of facts admitting or denying facts in the moving party's concise statement and "setting forth in separately numbered paragraphs *any other material facts* [1] that are allegedly at issue, and/or [2] that the opposing party asserts are necessary for the court to determine the motion for summary judgment." W.D. Pa. L.R. 56.1(C)(1)(c) (emphases and alterations added). On the contrary, Plaintiff merely recounted excerpts from his deposition within his response brief, which, according to the Local Rules, indicates that Plaintiff does not consider the alleged instances of unfavorable treatment to be "material facts that are allegedly at issue" and/or "necessary for the court to determine the motion

non-movant in summary judgment proceedings is entitled to have all inferences drawn in her favor, it has been recognized that inferences based upon speculation do not create genuine issues of material fact." *Keefer v. Durkos*, No. CIV A 3:04-187, 2006 WL 2773247, at *14 (W.D. Pa. September 25, 2006) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382, n. 12 (3d Cir.1990)).  Here, in the Court's estimation, Plaintiff's account of a few instances of unfavorable treatment appears to constitute his "own subjective interpretation of the events" based on speculation rather than the presentation of credible conflicting evidence based on facts. *Keefer,* 2006 WL 2773247, at *14 ("When a court is presented with credible evidence that is conflicting, and issues of credibility remain, summary judgment should not be entered, but when a non-movant relies upon her 'own subjective interpretation of the events' a motion for summary judgment is not properly contested") (citing *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 908-909 (3d Cir. 1984)).  In *Keefer*, the Court found that the plaintiff's attempt to link her speech to defendants' alleged knowledge of the speech (filing an affidavit) "through an inference based upon speculation" cannot create a genuine issue of material fact.  *Id.* at *17.  The Court finds that the same holds true here insofar as Plaintiff attempts to link his speech (filing of ethical complaint) to Defendant Moffat's knowledge through the alleged post-ACE complaint unfavorable treatment.  Similarly to *Keefer*, such a conclusion requires the Court to infer knowledge based on speculation that the unfavorable treatment resulted from the ACE complaint.  In addition, Plaintiff argues that the "close proximity" between Plaintiff's filing of a complaint with ACE and the alleged "adverse actions" (presumably) demonstrates knowledge on

_____

for summary judgment."

behalf of Defendant Moffat.[17]   However, while temporal proximity may be relevant in establishing that the protected activity was a substantial or motivating factor for retaliation, temporal proximity cannot be used to show that an employer was aware of the protected activity in the first place.  *See Ambrose*, 303 F.3d at 494 (providing that " 'temporal proximity' argument cannot show that the Commissioners had knowledge of his affidavit when they suspended him, which must be found as part of determining whether the affidavit was a substantial or motivating factor in his suspension").

Finally, the Court notes that Plaintiff only cites two cases in support of its position in his response:  *Stepanischen v. Merchants Despatch Transat Corat*, 722 F.2d 922 (1st Cir. 1983) and *Green v. City of Montgomery*, 792 F.Supp. 1238 (M.D. Ala. 1992).   While Plaintiff cites *Stepanischen* several times in support of denying summary judgment, he only cites *Green* on one occasion in support of his argument that circumstantial evidence may preclude summary judgment as to a First Amendment retaliation claim.   (*See* Docket No. 39 at 5-6).   Because Plaintiff only cites *Green* for general propositions of law as opposed to (for example) its purported factual similarities to the instant case thus requiring denial of summary judgment, the Court sees no reason to address *Green* further.   On the other hand, because Plaintiff appears to rely on *Stepanischen* in more detail, the Court will discuss it below, ultimately concluding that it does not preclude summary judgment.

In *Stepanischen*, first and foremost, the plaintiff appealed summary judgment in favor of defendant (employer) as to his claims for illegal discharge under the Railway Labor Act (RLA)

---

[17]
      The Court must presume because Plaintiff does not articulate that the "close proximity" demonstrates knowledge, but instead merely notes "that there is a close proximity between the Defendants' adverse actions and the filing of the complaint."  (Docket No. 39 at 6).

Section 2 Fourth, 45 U.S.C. § 152, as well as other state law claims, not a First Amendment retaliation claim. Second, *Stepanischen* concerned an action against his former employer to recover damages arising from alleged illegal discharge for union-organizing activities.[18] Third, the Court focused its reversal (in part) of summary judgment and remand on a conflicting account of key events offered by the parties. There, the plaintiff's termination stemmed from an incident on June 11, 1979, in which the plaintiff's immediate supervisor allegedly found a "set of falsified inspection cards" in plaintiff's truck that indicated inspection times when the plaintiff could not be found. *Id.* at 924. When asked where he was, plaintiff replied, "at breakfast." *Id.* Plaintiff's immediate supervisor reported the incident and plaintiff was suspended later that same day, only to be terminated after a hearing in which the company officials did not believe the plaintiff's witnesses (three) as to his location during his shift. Relevant here, Stepanischen alleged that the false charges of the June 11 incident represented circumstantial evidence of anti-union animus. On appeal, the U.S. Court of Appeals for the First Circuit found that genuine issues of material fact remain as to an anti-union reason for Stepanischen's discharge. In particular, the Court noted that while the employer filed affidavits from personnel denying any invidious motives along with Stepanischen's immediate supervisor's description of the incident, the plaintiff "state[d] in his deposition that on June 11 he was present on the job and had the inspection forms in his pocket at the time [his immediate supervisor] claims to have discovered them in the truck." *Id.* at 928. As such, the Court found that a jury could "conceivably believe that [the immediate supervisor] had fabricated, or exaggerated, his side of the story." On the

---

[18]    Stepanischen worked as an assistant inspector during the midnight to 8:00 a.m. shift for Merchants Despatch Transportation Corporation, whose employees inspected railroad refrigeration cars at rail yards in the northeast. *Stepanischen*, 722 F.2d at 922.

contrary, no such conflicting account of events exists here. While the *Stepanischen* Court also noted possible inferences concerning the employer's motivations stemming from unfavorable treatment after his union-organizing activities, the Court focused on a jury "choosing to credit Stepanischen's account and to discredit the employer's." *Id.* at 928.

Accordingly, Uhl has failed to offer any evidence (direct or otherwise) that Moffat knew of the identity of the complainant to the ACE and that this knowledge shaped Defendant Moffat's decision to terminate him in any way, which precludes summary judgment. As such, the Court will grant Defendants' motion for summary judgment as to Defendant Moffat.

2. *Individual Defendant Zilch*

Defendants assert that "not only is there no evidence that he had no knowledge of Uhl's involvement with the ACE Commission, there is also a total absence of any evidence that he tok any action to deprive Uhl of his constitutional rights." (Defendants' motion at 7). Plaintiff fails to specifically respond as to Defendant Zilch.

As an initial matter, Plaintiff does not specifically respond to Defendants' motion as to Defendant Zilch;[19] rather, Plaintiff apparently seeks to rely on his pleadings, which, of course, he cannot do. *Shallcross v. Path Truck Lines*, 2006 U.S. Dist. LEXIS 3375, at *4 (W. D. Pa. Jan. 30, 2006) (citing *Celotex*, 477 U.S. at 324) ("Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that

---

[19]
      In point of fact, while Defendant mentions Zilch's name in passing in his response motion and in his statement of facts, (*see* Docket No. 38 at ¶4; Docket No. 39 at 2), Plaintiff proffers no argument or analysis in any way as to Defendant Zilch in his response brief but rather he appears only to contest summary judgment as to Defendants County and Moffat.

there is a genuine issue for trial"); *see also* Fed.R.Civ.P 56(e)(2). Plaintiff appears to have abandoned his claim against Defendant Zilch and courts have granted summary judgment where a party fails to respond. *See e.g., Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (granting summary judgment because plaintiff failed to address one of the defendant's arguments in his summary judgment motion, which resulted in the plaintiff's waiver of the opportunity to contest summary judgment on that ground); *Evans v. Nine West Group, Inc.*, Case No. 00-4850, 2002 U.S. Dist. LEXIS 6427, at *12-13 (E.D. Pa. Apr. 15, 2002) (finding that the plaintiff abandoned a claim by failing to assert the claim in her opposition to defendant's summary judgment motion: "Under analogous circumstances, courts both within and beyond the Third Circuit routinely have held the claim at issue to have been abandoned"); *Hackett v. Cmty. Behavioral Health*, Case No. 03-6254, 2005 U.S. Dist. LEXIS 8410, at *23 (E. D. Pa. May 6, 2005) (finding that the plaintiff only addressed her retaliation claims but not her race and gender discrimination claims, therefore, she abandoned the latter claims). Notwithstanding Plaintiff's failure to specifically respond to Defendants' motion as to Defendant Zilch, summary judgment is appropriate here in that Plaintiff has adduced no evidence, direct or circumstantial, to establish any personal involvement by Defendant Zilch in Plaintiff's termination.[20] *See Baker v. McCollan*, 443 U.S. 137, 142 (U.S. 1979) (providing that "a public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights") (internal quotation and end citation omitted). Similarly, Uhl offered no evidence that Zilch possessed

---

[20] In their Statement of Undisputed Facts, Defendants assert that "Zilch was not involved in the decision to terminate Uhl." (Docket No. 35 at ¶7) (citations omitted). In response, Plaintiff denies the same "absent further proof." (Docket No. 40 at ¶7). However, Plaintiff bears the burden to establish the personal involvement of Defendant Zilch by presenting some form of evidence, which he has failed to do.

knowledge of Uhl's involvement with the ACE Commission and, to the extent Plaintiff intends for the alleged circumstantial evidence regarding Defendant Moffat to demonstrate knowledge on behalf of Defendant Zilch, said argument fails for the same reasons. Hence, the Court will grant Defendant's motion for summary judgment as to Defendant Zilch.

3.  *Defendant County*

Defendants assert that because "Uhl is unable to establish any constitutional violation," the claim against Defendant County fails. In response, Plaintiff provides no substantive argument as to Defendant County until the last page of his response brief, in which he asserts "that Defendant Allegheny County had endorsed a policy of unfair, disproportionate discipline against the Plaintiff as a result of his engagement in activities protected under the First Amendment." (Docket No. 39 at 13).

Local governing bodies are deemed to be "persons" within the meaning of §1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To establish municipal liability, a plaintiff must: (1) demonstrate the existence of an unlawful policy or custom, and (2) prove that the municipal practice was the proximate cause of his injury. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see Monell v. New York City Department of Social Services*, 436 U.S. 658, () ("Municipal liability is established if a constitutional violation was caused by action taken pursuant to a municipal policy or custom"). A municipality is liable "where the municipality itself causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989). To establish causation, plaintiff must allege a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice. *Bielevicz*, 915 F.2d at 850; see Monell,

690-91 (providing that a plaintiff must allege that the action inflicting injury flowed from an explicitly adopted policy or a tacitly authorized custom). A municipality is not liable for the alleged misconduct of its employees absent a link or nexus between the custom or policy and the employee's misconduct; in other words, municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, *i.e.*, through application of the doctrine of *respondeat superior*. *Monell*, 436 U.S. at 691, 694.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), the Court further clarified that "municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483 (citation omitted). The Supreme Court has instructed that a "policy" is made when a decision maker possessing final authority over the subject matter issues an official proclamation, policy, or edict. *Pembaur*, 475 U.S. at 481. Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law. *Monell*, 436 U.S. at 690; *See also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Here, Plaintiff fails to point to (or even allege the existence of) any municipal policy or custom to support liability against Defendant County. Plaintiff's entire argument as to Defendant County consists of argument of counsel on the last page of its response brief with no citation to evidence of record. Furthermore, assuming *arguendo* that Plaintiff identified a policy or custom,

> it is not enough for a § 1983 plaintiff merely to identify conduct
> properly attributable to the municipality. The plaintiff must also

21

> demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). Again, Plaintiff has failed to establish causation between the action and the deprivation of rights as to Defendant county. On the contrary, Plaintiff's claim against Defendant County appears to be one based on respondeat superior, which *Monell* forbids. *See* 436 U.S. at 694. Hence, the Court will grant Defendant's motion for summary judgment as to Defendant County.

4.     *Defendant County Police*

As to Defendant County Police, in a § 1983 suit, the deprivation of a federal right or privilege must be caused by "a *person* who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). It is firmly established that a municipal police department is not a proper party in a § 1983 action. *See Johnson v. City of Erie,* 834 F.Supp. 873, 879 (W.D. Pa. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not") (citing *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 826 (D. N.J.1993) (collecting cases)); *see also Padilla v. Township of Cherry Hill,* 110 Fed.Appx. 272, 278 (3d Cir. 2004) (not precedential) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity")

(quoting *Debellis v. Kulp,* 166 F.Supat 2d 255, 264 (E.D. Pa. 2001)).  Hence, because Defendant County Police is merely an administrative arm (or sub-unit) of Defendant County, the Court will grant Defendant's motion for summary judgment as to Defendant County Police.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [33] is **GRANTED**. An appropriate Order to follow.


<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge


Date:   July 22, 2008
CC:     All counsel of record.